**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**District Judge William J. Martìnez**

Civil Action No. 10-cv-01014-WJM

WAYNE A. SMALL,

      Applicant,

v.

KEVIN MILYARD, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

---

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

WILLIAM J. MARTÍNEZ, District Judge

      This matter is before the Court on Applicant Wayne A. Small's Application for a

Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (Doc. No. 3) and

his Addendum to Applicant's 28 U.S.C. 2254 Petition for Writ of Habeas Corpus

("Addendum") (Doc. No. 24).[1]  Respondents filed an Answer on March 29, 2011.  (Doc.

No. 15.)  Applicant filed a Reply on April 27, 2011.  (Doc. No. 18).  After reviewing the

pertinent portions of the record in this case including the Application, the Answer, the

Reply, and the state court record, the Court concludes that the Application should be

denied.

---

[1] Because Applicant appears *pro se*, the Court construes his filings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972).  However, the Court does not serve as his advocate.  *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir. 1991).

# I.  BACKGROUND

Following a jury trial in consolidated Case Nos. 04CR2046 and 04CR2041,

Applicant was convicted of second degree burglary and attempted second degree

burglary and possession of burglary tools in the Denver District Court and was

sentenced as a habitual criminal to twenty-four years of incarceration.  The following

factual summary is taken from the statement of facts in the Colorado Court of Appeals'

(CCA's) opinion on direct appeal.

> On February 19, 2004, an officer from the Denver Police
> Department was dispatched to a burglary alarm at a liquor store.  Upon
> arriving, the officer determined someone had broken into the store through
> a hole in the eaves of the roof.
>
> The officer reviewed a video security tape.  It showed a man
> dropping through the ceiling into the store, stealing loose change and two
> large bottles of liquor, and then leaving through the ceiling.  The store
> owner reviewed the tape, and later identified defendant in a photographic
> lineup as the man in the video.
>
> On May 3, 2004, a Denver police officer was driving on Colfax
> Avenue when he saw a man, later identified as defendant, using a
> crowbar to pry open the door of another liquor store.  The officer used a
> microphone to order defendant to stop and show his hands.  Defendant
> walked away from the store and got in a car.  He drove away, but struck a
> parked car.  Defendant ran off, and was almost immediately apprehended
> by another officer.
>
> Defendant was convicted as charged.  The trial court subsequently
> imposed prison sentences under the habitual offender statute.

*State of Colo. v. Small*, Nos. 05CA1045 & 05CA1046 1-2 (Colo. App. Mar. 13, 2008)

(unpublished).

Applicant's conviction and sentence were affirmed by the CCA on March 13,

2008.  *See Small*, Nos. 05CA1045 and 05CA1046.  The Colorado Supreme Court

denied certiorari review on June 16, 2008.  *See State of Colo. v. Small*, No. 08SC309

(Colo. June 16, 2008) (unpublished).

Subsequently, Applicant filed a Colo. R. Crim. P. 35(c) postconviction motion that

was denied by the trial court.  Applicant appealed the denial.  The CCA dismissed the

appeal in part and affirmed the trial court's denial in part.  *See State of Colo. v. Small*,

No. 08CA2379 (Colo. App. Oct. 29, 2009) (unpublished).  The Colorado Supreme Court

denied certiorari review on March 8, 2010.  *State of Colo. v. Small*, No. 2009SC1040

(Colo. Mar. 8, 2010) (unpublished).

## II.  FEDERAL COURT PROCEEDINGS

Applicant asserts three claims in the Application and four additional claims in the

Addendum.  The Court conducted a preliminary review of the seven claims and

dismissed two of them.  One of the claims was dismissed for lack of merit and the other

because it is procedurally barred.  The Court found the remaining five claims are timely

and properly exhausted.  These claims are as follows:

1) Ineffective Assistance of Counsel, including failure to:

a) File motions to suppress evidence, statements, and
identification procedure,

b) Litigate a motion that was filed challenging the prior
convictions,

c) Pursue a court rule violation committed by the
prosecution,

d) Consult with Applicant on important issues,

e) Prepare an adequate defense,

f) Present exculpatory information,

g) Explain the *Curtis* Advisement, and

h) Consult with Applicant on his right to testify;

(2) Trial court error in denying the *Baston* objection to the prosecution's peremptory challenge;

(3) Trial court error in granting the prosecution's motion to consolidate Applicant's criminal cases;

(4) Prosecutorial Misconduct in closing argument; and

(5) Sixth and Fourteenth Amendment violations because Applicant was deprived of his right to a jury trial on the habitual criminal charges.

Accordingly, the Court will consider the merits of the remaining claims below.

## III.  LEGAL STANDARDS

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court,

unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to

apply a rule of law that was clearly established by the Supreme Court at the time his

conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly

4

established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.

Furthermore,

> clearly established law consists of Supreme Court holdings in cases where
> the facts are at least closely-related or similar to the case *sub judice*.
> Although the legal rule at issue need not have had its genesis in the
> closely-related or similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry

pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is

implicated, the Court must determine whether the state court's decision was contrary to

or an unreasonable application of that clearly established rule of federal law. *See*

*Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established
> federal law if: (a) "the state court applies a rule that
> contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006) ] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.' "
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the
> correct governing legal rule from Supreme Court cases, but
> unreasonably applies it to the facts. *Id.* at 407-08.
> Additionally, we have recognized that an unreasonable
> application may occur if the state court either unreasonably
> extends, or unreasonably refuses to extend, a legal principle

5

> from Supreme Court precedent to a new context where it
> should apply.

*House,* 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective one.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411.  "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.

In addition,

> evaluating whether a rule application was unreasonable
> requires considering the rule's specificity.  The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations.  It is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786,  --- U.S. --- (Jan. 19, 2011) (internal quotation

marks and citation omitted).  The Court "must determine what arguments or theories

supported or . . . could have supported[ ] the state court's decision" and then "ask

whether it is possible fairminded jurists could disagree that those arguments or theories

are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.*  "[E]ven

a strong case for relief does not mean the state court's contrary conclusion was

unreasonable."  *Id.* (citation omitted).  "Section 2254(d) reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* (Internal quotations marks and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671. Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and Applicant bears the burden of rebutting the presumption by clear and convincing evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Richter*, 131 S. Ct. at 784. ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning"). Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 784-85. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas applicant's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 784.

In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the [applicant's] claims." *Id*. Likewise, the Court applies the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). If a claim was

not adjudicated on the merits in state court, and if the claim also is not procedurally

barred, the Court must review the claim *de novo* and the deferential standards of

§ 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV.  DISCUSSION

### A.  Claim One

As set forth above, Applicant alleges eight claims of ineffective assistance of

counsel.  It was clearly established when Applicant was convicted that a defendant has

a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668

(1984).  To establish that counsel was ineffective, Applicant must demonstrate both that

counsel's performance fell below an objective standard of reasonableness and that

counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687.

"Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  "A

court considering a claim of ineffective assistance must apply a 'strong presumption'

that counsel's representation was within a 'wide range' of reasonable professional

assistance."  *United States v. Rushin*, --- F.3d ---, 2011 WL 2547563 (10th Cir. June 28,

2011) (quoting *Richter*, 131 S. Ct. 770, 787 (2011) (citation omitted).   It is an applicant's

burden to overcome this presumption by showing that the alleged errors were not sound

strategy under the circumstances, *see Strickland*, 466 U.S. at 689, and that the errors

were so serious that "counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment.' " *Rushin*, 2011 WL at 2547563 (quoting *Richter*,

131 S. Ct. at 787) (emphasis and citation omitted).  An applicant must show counsel

failed to act "reasonably considering all the circumstances."  *Cullen v. Pinholster*, 131 S.

Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 688, 690).

Under the prejudice prong, an applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In assessing prejudice under *Strickland* the question is whether it is reasonably likely the result would have been different. *Richter* at 791-92. "The likelihood of a different result must be substantial, not just conceivable." *Id.* (citing *Strickland*, 466 U.S. at 693.)

Furthermore, under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard," which is the question asked "on direct review of a criminal conviction in a United States district court." *Richter*, 131 S. Ct. at 785. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See Strickland* at 697. Also, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698. With respect to Applicant's ineffective assistance of counsel claim the CCA found as follows:

> Under Crim. P. 35(c)(3)(VIII), "[a] court shall not deny a postconviction claim of ineffective assistance of trial counsel on the ground that all or part of the claim could have been raised on direct appeal."
>
> When confronted with a claim of ineffective assistance of trial counsel, a court may deny the motion without a hearing only if the existing record shows that the defendant's arguments, even if true, would fail to establish one or the other prong of the test provided in *Strickland* [   ], 466

U.S. [at 687], or "where the allegations of counsel's deficient performance are merely conclusory, vague, or lacking in detail." [People v.] Ostorio, [170 P.3d 796,] 799 [(Colo. App. 2007)].

A criminal defendant is entitled to the effective assistance of counsel. *Strickland*, 466 U.S. at 685-86. To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Id.* at 687; *People v. McDowell*, --- P.3d ---, --- (Colo. App. No. 07CA1358, Mar. 5, 2009). A lawyer's performance is deficient when he or she makes errors "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Counsel's deficient performance is prejudicial when the errors are "so serious as to derpive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Mere disagreement as to trial strategy will not support an ineffective assistance of counsel claim." *McDowell*, --- P.3d at --- (citing *People v. Bossert*, 722 P.2d 998, 1010 (Colo. 1986)).

Here, defendant argued that his trial counsel provided ineffective assistance because (1) she did not file motions to suppress evidence, statements, and the identification procedure; (2) she did not file a "[m]otion to [s]uppress unconstitutional statute"; (3) her failure to file motions violated Crim. P. 47; (4) she did not raise a "Jury Challenge" based on the fact that none of the jurors were of defendant's ethnic background; and (5) she "failed to present a defense" based on defendant's claim that he was not the person shown in a surveillance tape depicting one of the burglaries. We agree with the postconviction court that defendant's arguments were conclusory and he did not provide facts that would support a claim of ineffective assistance of trial counsel. *See Osorio*, 170 P.3d at 800.

Further, the record refutes the facts relied upon by defendant:

- Contrary to defendant's argument, trial counsel filed a motion to suppress evidence, including his statement to the police.

- Trial counsel argued at a pretrial hearing to suppress the identification procedure.

- Defendant relies on Crim. P. 47 to support his argument that trial counsel should have filed more motions on his behalf. However, Crim. P. 47 does not require counsel to file motions. Rather, it is a rule prescribing the circumstances under which a motion is appropriate and the format in which it should [be] filed.

- Trial counsel raised a *Batson* challenge during jury selection and she argued that a member of defendant's ethnic group should not be removed from the jury.

- The record shows that trial counsel presented a comprehensive defense based on the theory that defendant was not the person who committed the burglary and attempted burglary.  As part of that defense, trial counsel argued that defendant was not person shown in the liquor store video recording.

 The record available to the trial court establishes that defendant's arguments satisfy neither the deficient performance prong nor the prejudice prong of the *Strickland* test.  Therefore, we further conclude that defendant was not entitled to a postconviction hearing on his ineffective assistance of counsel claim.  *See Ardolino* [*v. People*], 69 P.3d [73] 77 [2003].

*Small*, No. 08CA2379 at 7-10.

Pursuant to § 2254(e)(1), the factual findings of the state courts are presumed correct.  Applicant bears the burden of rebutting this presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  The CCA found that trial counsel contrary to Applicant's arguments (1) filed a motion to suppress evidence, even Applicant's statement to the police; (2) argued at pretrial to suppress the identification procedure; (3) raised a *Batson* challenge claiming a member of Applicant's ethnic group should not be removed from the jury; and (4) presented a comprehensive defense based on the theory that Applicant was not the person who committed the burglary or attempted burglary.

**a and b)**  **Failure to File Motions to Suppress and to Challenge Prior Convictions**

Applicant claims he was represented by three different attorneys during pretrial proceedings and his trial. He further claims that the attorney representing him at his arraignment did not inform him of the motions she had prepared. Applicant contends that he filed three *pro se* motions when arraignment counsel would not share with him the details of the motions she had prepared. He claims that in one of the *pro se* motions he stated that he informed counsel he was not the individual identified on the surveillance video during the time of the burglary. Applicant also claims he stated in the *pro se* motion that the evidence and information obtained through discovery supported his statement to counsel, but counsel failed to file a motion that incorporated this evidence in Case No. 04CR2046. Applicant further asserts that based on this evidence counsel should have filed a motion to suppress the identification by the eyewitness and the investigating detective and police officer.

Applicant also contends that trial counsel submitted a motion challenging his prior convictions, but she did not proceed with the motion or speak on his behalf during the motions hearing held regarding his habitual charges.

For the following reasons, Applicant fails to demonstrate any clear and convincing evidence to overcome the CCA's decision that the efforts by representing counsel to suppress evidence and the identification procedure, and to file pretrial motions, were either deficient performance or prejudicial under the *Strickland* test.

First, a motion to suppress out-of-court identification in Case No. 04CR2046 was filed by arraignment counsel. *See Small*, Case No. 04CR2046, Criminal Flat File at 5. In the motion, counsel requested the suppression of the pretrial line-up identification because of the suggestiveness of the procedure. *Id.* The *pro se* motion to dismiss filed

by Applicant three days after the motion to suppress was filed, *see id.* at 11, does not include any information that should have been included in the motion to suppress and fails to support a finding arraignment counsel was ineffective in not including the information in the motion to suppress.  Applicant asserts in the motion to dismiss that no credible eyewitness directly observed him at the time of the offense and the liquor store owner's identification was not relevant and the detective's investigation was "fixed."  *Id.* at 11.   Applicant's assertions are conclusory and self-serving.  Nothing in the motions supports a finding that counsel was ineffective in not including the information in the motion to suppress that was filed.

Also, counsel filed a motion to suppress observations, evidence, and statements obtained through an unlawful stop, arrest, and search in Case No. 04CR2041.  *See Small*, No. 04CR2041, Criminal Flat File at 8.  In the motion to suppress, counsel argues that Applicant was subject to an unconstitutional seizure, arrest and search and that all evidence, observations, and statements obtained as a result be suppressed.  *Id.* The *pro se* motions to dismiss that Applicant filed in Case No. 04CR2041, three days after the motion to suppress was filed, *see id.* at 14-15, also do not include any information that would support a finding that trial counsel was ineffective in not including the information in the motion to suppress.  In the motions to dismiss, Applicant argues generally that he did not commit burglary as defined by statute.  *Id.* at 14-15. Applicant's statements in the motions to dismiss are conclusory and self-serving. Nothing in the motions supports a finding that counsel was ineffective in not including the information in the motion to suppress that was filed.

14

A hearing was held on both suppression motions.  *See* Case Nos. 04CR2041 and 04CR2046, Dec. 3, 2004 Mot. Hr'g Tr.  Witnesses were subject to both direct and cross-examination.  Nothing in either the pretrial motions submitted by arraignment counsel or the cross examinations by trial counsel during the motions hearing indicate that counsels' performance fell below an objective standard of reasonableness.  Even if counsels' performance fell below an objective standard of reasonableness, Applicant has not shown that he was prejudiced by their actions.

Applicant's argument that discovery would support a finding that he was not the one identified on the surveillance video at the time of the burglary in Case No. 04CR2046 is self-serving.  The officers' testimony given at the motions hearing more than supported a basis for probable cause for his search and arrest and admission of his statements as being voluntary after he was arrested in Case No. 04CR2041.  *See* Dec. 3, 2004 Mot. Hr'g Tr.  Furthermore, nothing in the officers' testimony regarding the manner in which the photo identification of Applicant was conducted in Case No. 04CR2046 supports a finding of suggestiveness.  *Id.*

As for Applicant's claim that trial counsel was ineffective in not arguing or pursuing the motion she filed attacking Applicant's prior convictions, Applicant fails to assert how he was prejudiced by counsel's inaction.  In *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 403-04 (2001), the United States Supreme court said:

> [O]nce a state conviction is no longer open to direct or collateral attack in
> its own right because the defendant failed to pursue those remedies while
> they were available (or because the defendant did so unsuccessfully), the
> conviction may be regarded as conclusively valid.  If that conviction is later
> used to enhance a criminal sentence, the defendant generally may not
> challenge the enhanced sentence through a petition under § 2254 on the
> ground that the prior conviction was unconstitutionally obtained.

(internal citation omitted). "The only exceptions exist when: 1) counsel is not appointed in violation of the Sixth Amendment; or 2) no channel of review is available through no fault of the [applicant]." *Broomes v. Ashcroft,* 358 F.3d 1251, 1254 (10th Cir. 2004). Prisoners are not entitled to an exception on the basis of inadequate representation. *Lackawanna,* 532 U.S. 394 (no § 2254 remedy for ineffective assistance of counsel with respect to prior conviction).

Neither exception applies to the motion Applicant's counsel filed challenging his prior convictions. Applicant's counsel did not argue in the motion that a Sixth Amendment violation occurred in the prior convictions or that Applicant was faultless in failing to obtain timely review of his constitutional claims. Although counsel did argue that Applicant was not aware of his Rule 35(c) appellate rights, "ignorance of the law, even for an incarcerated pro se applicant, generally does not excuse prompt filing." *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) (internal quotation marks omitted). Even if counsel's performance fell below an objective standard of reasonableness in not pursuing the prior convictions motion, Applicant has not shown that he was prejudiced by counsel's actions.

There is a reasonable argument for finding that counsel satisfied the *Strickland* deferential standard. *See Richter*, 131 S. Ct. at 788. The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Subparts a and b, therefore, lack merit and will be dismissed.

16

### c)      Pursue a Court Rule Violation by the Prosecution

Applicant claims that all written motions were to be submitted within thirty days from the arraignment hearing, and the prosecution's motion to consolidate did not meet that deadline.  Applicant contends that this violation should have been brought to the court's attention and not doing so was negligent and damaging to his defense.

The Court fails to see, and Applicant fails to state, how a month delay in filing a motion to consolidate was prejudicial to Applicant's case.  Furthermore, a violation of a court rule, *per se*, does not state a violation of the Constitution or laws of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Therefore, this claim will be dismissed for lack of merit.

### d, e, and f)   Consult with Applicant on Important Issues, Prepare an Adequate Defense, and Present Exculpatory Evidence

Applicant claims that trial counsel was more focused on persuading him to agree to a plea bargain rather than to discussing an adequate defense with him.  Applicant further contends that because counsel did not discuss a strategy or defense plan with him it is obvious that counsel failed to prepare an adequate defense.  Applicant bases this claim on two arguments, including that he was not the individual observed in the surveillance video and that the defense offered by counsel was not based on the facts obtained from discovery.

Applicant contends the following facts support his lack of defense claim.  First, he asserts that the officers and the investigative detective were unable to identify Applicant as the suspect in the surveillance tape.  He further claims that an eyewitness who gave descriptive details of what he was wearing on the night of the burglary did not implicate

him as the suspect, because the suspect in the surveillance video was wearing different clothing than what the eyewitness described.  Applicant also contends that the liquor store owner's son, Mr. Lee, who supposedly identified Applicant on the video surveillance the night of the burglary, did not sign a statement until five days after the burglary, and the reporting officer did not take a statement from Mr. Lee.  Applicant further contends that Mr. Lee either was not at the scene of the burglary or the reporting officer interfered with the investigation by not taking a report.  In conclusion, Applicant maintains that this exculpatory evidence, which was material and favorable to him, was not presented at his trial in violation of his right to due process.

None of the above evidence supports a finding that trial counsel failed to present a comprehensive defense based on the theory that defendant was not the person who committed the burglary.  Even if trial counsel was remiss in not arguing (1) the discrepancy between an eyewitness's description of what the suspect was wearing and of what the suspect was wearing in the surveillance video of the liquor store; (2) the delay in Mr. Lee signing a report; and (3) the reporting officer's failure to take a statement from Mr. Lee the night of the burglary, Mr. Lee identified Applicant as the person in the surveillance video and subsequently identified him as the same person in the photo identification line-up and in court.  Furthermore, trial counsel cross-examined both Mr. Lee and the officer who wrote the report with great detail regarding the date of the officer's report and whether Mr. Lee provided a written statement.  *See* Jan. 10, 2005 Trial Tr. at 204-12 and Jan. 11, 2005 Trial Tr. at 29-39 and 46-51.

Moreover, the evidence identified by Applicant is not exculpatory.  Not signing a statement regarding the burglary until five days after the burglary took place and not

18

having a witness complete a statement does not support a finding that Applicant did not

commit the burglary.  Even if counsel's performance fell below an objective standard of

reasonableness, Applicant has not shown that he was prejudiced by her actions.

There is a reasonable argument for finding that counsel satisfied the *Strickland*

deferential standard.  *See Richter*, 131 S. Ct. at 788.  The CCA decision regarding this

claim did not result in a decision that was contrary to, or involve an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of

the United States and did not result in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  Subparts d, e, and f, therefore, lack merit and will be dismissed.

### g and h)      Explain the *Curtis* Advisement and Consult on Right to Testify

Applicant claims that trial counsel failed to explain or even discuss the

importance and the significance of a *Curtis* advisement.  Upon review of Applicant's

opening brief on appeal, and the claims he identified he desired to include in an

amended brief but was denied the opportunity to do so, the Court finds that Subparts g

and h were not presented to the CCA.  If these claims were not raised in his appeal they

now are procedurally defaulted in state court.  The Colorado Rules of Criminal

Procedure prohibit successive postconviction Rule 35 motions with limited exceptions.

*See* Colo. R. Crim. P. 35(c)(3)(VI) and (VII).  The exceptions are not applicable to

Subparts g and h.  *Id.*

Even if Subparts g and h were exhausted, the claims would be denied for the

following reasons.  Applicant was given a *Curtis* advisement by the trial court.  *See* Jan.

11, 2055 Trial Tr. at 185-88.  During this advisement, the trial court explained his right to

testify or not to testify and the prosecution's right to cross-examine him if he does testify.  *Id.*  Applicant further was instructed if he testified the prosecution could inquire about any previous felony convictions, but the jury would be instructed to consider the felonies only as they bear on his credibility.  The court also instructed Applicant that the jury could not infer guilt if he elected not to testify.  *Id.*  Applicant responded to the trial court's questions that he understood his right to testify or not to testify and that he felt he was competent to make such a decision and was not under the influence of any drugs or alcohol.  *Id.* at 187-88.

Even if counsel's performance fell below an objective standard of reasonableness, Applicant has not shown that he was prejudiced by her failure to discuss with him the importance or significance of a *Curtis* advisement and advise him on his right to testify.  Based on the advisement given by the trial court, Applicant was well informed regarding his right to testify.

There is a reasonable argument for finding that counsel satisfied the *Strickland* deferential standard.  *See Richter*, 131 S. Ct. at 788.  The CCA decision regarding this claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Nonetheless, Subparts g and h, will be dismissed as procedurally defaulted in state court and barred from federal habeas review.

**B.    Claim Two**

Applicant asserts that the prosecution's reason for excusing an African-American juror was prejudicial and the trial court erred in denying the *Baston* objection to the prosecutor's peremptory challenge.

With respect to Applicant's *Batson* claim the CCA found as follows:

> Defendant contends the trial court erred by overruling his objection, under *Baston v. Kentucky*, 476 U.S. 79 (1986), to the prosecutor's peremptory challenge.  Defendant argues the court erred by denying him the opportunity to show that the prosecution's peremptory challenge of Juror E., an African-America juror, was pretextual.  We are not persuaded.

> The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the use of racial discrimination in the exercise of peremptory challenges.  *Valdez v. People*, 966 P.2d 587, 589 Colo. 1998).

> A three-step process is used for evaluating *Batson* claims of racial discrimination:

> • The party objecting to the peremptory challenge must make a prima facie showing that the other party excluded a potential juror based on race.

> • If the objecting party establishes a prima facie case, the burden shifts to the proponent of the peremptory challenge to come forward in the second step with a race-neutral explanation for the challenge.

> • If a race-neutral reason is articulated, the trial court must determine whether the opponent of the challenge has proved purposeful racial discrimination, including providing the opponent of the challenge with an opportunity to show that the race-neutral explanation is a pretext for discrimination

> The trial court must then determine, on the basis of all the evidence before it, whether it can find by a preponderance of the evidence that one or more potential jurors were excluded because of race.  *Valdez*, 966 P.2d at 589-90.  We review de novo a trial court's ruling on steps one and two of the analysis, but defer to the trial court's ultimate resolution of a *Batson* objection in step three, reversing only for clear error.  *Valdez*, 966 P.2d at 590.

21

Defendant argues the trial court did not make specific findings that he made a prima facie showing of discrimination.  However, this contention is moot because the prosecutor offered a race-neutral explanation for the peremptory challenge, and the trial court ruled on the ultimate question of intentional discrimination.  *See Valdez*, 966 P.2d at 593; *People v. Vieyra*, 169 P.3d 205, 211 (Colo. App. 2007); *Donelson v. Fritz*, 70 P.3d 539, 542 (Colo. App. 2002).

Our de novo review indicates that the prosecutor's explanation for peremptory challenge was race neutral.  *See People v. Gabler*, 958 P.2d 505, 508 (Colo. App. 1997) (a prospective juror's potential for bias against the police is race neutral).  The record established that Juror E. spoke about a potentially negative experience with a police officer in traffic court. The prosecutor was concerned that the juror was upset by the experience.

The trial court allowed defendant to respond to the prosecutor's stated reasons for the challenge, and then determined the merits of the challenge based on the evidence before it.  *See Valdez*, 966 P.2d at 590. The record supports the trial court's determination that defendant did not show purposeful discrimination in the prosecutor's peremptory challenge. Thus, there was no clear error in the trial court's resolution of the third *Baston* step.

*Small*, Nos. 05CA1045 & 05CA1046 at 2-5.

In *Batson*, the U.S. Supreme Court held that the Equal Protection Clause prohibits the prosecution's use of peremptory challenges to exclude potential jurors on the basis of their race.  *Batson*, 476 U.S. at 86.  The three-part procedure set forth in *Batson* to evaluate claims that the prosecution impermissibly used its peremptory jury challenges is the same procedure used by the CCA in analyzing Applicant's *Batson* claim.

Upon review of the trial transcript the Court finds that during voir dire the following questioning took place between the prosecution and the potential juror in question, Ms. Eisenman, regarding her experience with police officers, which the prosecution argued was the basis for the peremptory challenge to this juror.

PROSPECTIVE JUROR: I was stopped coming out of the mousetrap for an infraction on a solid white line and since I got my license ever so long ago, the rules had changed a little bit.  However, I thought that I had not changed to the other lane prior to the ending of the solid white line.  The judge agreed with me.  The officer and I shook hands and we apologized at the end of the case and I got my pristine driving record back.  That's about it.

MS. CARPENTER:  So you were ticketed, went to court, went through the system?

PROSPECTIVE JUROR:  Yes, ma'am.

MS. CARPENTER:  And the system worked for you?

PROSPECTIVE JUROR:  I think it did.

MS. CARPENTER:  Right.  Maybe the police officer thinks it didn't but you think it did, right?

PROSPECTIVE JUROR:  Yes.

MS. CARPENTER:  Was that a particularly good or bad experience for you?

PROSPECTIVE JUROR:  I had not ever gotten a moving violation.  I'm in my 50s and I had my first driver's license at 16, so it was important for me to go to court because I felt like I had not committed the fraction.  And I was elated with the outcome, yes.

MS. CARPENTER:  Okay.

PROSPECTIVE JUROR:  And the court system is the first day that I was due in court.  I was ill and the judge let me go home.  I knew I had to come or else there would be a bench warrant.  So I knew I had to show up.  Sick or otherwise, you must come.  And he excused me, let me out early and told me the next time that I would be expected to sit or otherwise there would be a warrant.  This wasn't a bad experience.

MS. CARPENTER:  It wasn't?

PROSPECTIVE JUROR:  No.

MS. CARPENTER:  Okay.  Was it a positive experience for you in any way?

23

PROSPECTIVE JUROR:  I kind of think so.

MS. CARPENTER:  Because you kind of got to see the system work?

PROSPECTIVE JUROR:  I got to see the system work.  I got another choice.  If I wanted a jury trial, if I wanted the judge to decide the case based on the law and kind of understood the law that the officer applied to me when he ticketed me even though I disagreed with him.

MS. CARPENTER:  So you had a good experience with the police officer even though you disagreed with his judgment call?

PROSPECTIVE JUROR:  Yes

MS. CARPENTER: Okay.  So would you feel, Ms. Eisenman, comfortable then with listening to police officers and judging their testimony like you would other witnesses who take the stand?

PROSPECTIVE JUROR:  I think so.

Trial Tr. Jan. 10, 2005 at 82-84.

The following colloquy took place between the trial court, the prosecution, and trial counsel regarding the peremptory challenge to juror Eisenman and the *Baston* issue.

MS. CARPENTER: While we're back here, the only person in the presumptive panel that I intend to challenge was Ms. Eisenman who is black.  She is not the only person of color but she is the only black juror on the presumptive panel and so I wanted to do that at the bench.

THE COURT:  Let's do it here.  What is your challenge going to be?

MS. CARPENTER: My challenge was, Your Honor, that she had a long drawn out experience in traffic court with a police officer who she disagreed with and on the presumptive panel she is the only person that had that type of interaction with the police officer and most of my witnesses in this case are police officers.

She said she ended it amicably but I just think that she believes the officer was wrong and she still does to this day.  And she is going to hear from a lot of police officers in this case, your Honor.

THE COURT: Mr. Flavin, anything?

MS. FENDERSON: Judge, obviously, it depends on who else she may exercise challenges on but I think that I certainly didn't see that in Ms. Eisenman talking about having a bad experience from police officers.  But, frankly, each police officer is judged by his or her own credibility.

THE COURT: I don't think that that rises to the level.  I don't think Ms. Carpenter's challenge rises to the level of being barred by *Batson*.  My observation of the juror's responses were indicative of, if not some hostility towards police officers, some -- she really thought -- she went on at some length about a relatively minor traffic infraction almost to the extent that she felt that she was being singled out by the arresting officer.  At least that's what it appeared to me.  I think there is a race-neutral basis for a challenge and I'll allow it when we get back out there but your record is preserved.

Trial Tr. Jan. 10, 2005 at 116-17

At a later point in voir dire, the prosecution sought to raise a second peremptory

challenge to excuse another juror.  Trial counsel objected to the prosecution's second

peremptory challenge under *Batson* and stated as follows:

MR. FLAVIN: Yes, Judge.  I would now make our challenge under *Batson*.  It's become clear that the alleged race-neutral comments of Ms. Carpenter are not well taken.  We have -- the people that she's excused were both people who talked about there being discrimination based on race.  One is Ms. Eisenman who is an African America woman who talked about having a German husband and how there are misimpressions of police just because of that.  Ms. Williams is a Caucasian who is married to an African American male and made comments about the fact that people have had impressions on them based upon their race or ethnicity of her husband and her children being biracial.  I think that then raises the issue.

Those are the only two people that Ms. Carpenter has challenged are people who are of that experience, and I think that those are not race neutral but are biases and prejudices and ask that the people, Ms. Eisenman and Ms. Thiesmcwilliams, be placed back on the jury.

THE COURT:  Ms. Carpenter?

MS. CARPENTER:  Your Honor, first of all, Ms. Thiesmcwilliams is not of color.  And, secondly, she is a social worker.  She has been a social

worker for quite some time.  And, Your Honor, this is my bias.  I believe social workers have a tough time making decisions and she also stated that she had some shady boyfriend and that she was an assault victim. She seemed to be bringing a lot to the table.  But basically I find in my own personal experience that social workers have a tough time passing judgment, that they want to give people a second and a third chance and that is why I excused Ms. Thiesmcwilliams.

THE COURT: All right.  I'm going to deny the *Batson* challenge.  We'll put another juror in the seat.  Thank you.

Trial Tr. Jan. 10, 2005 at 122-23.

The United States Supreme Court held in *Batson* that the Fourteenth Amendment's Equal Protection Clause prohibits the prosecution's use of peremptory challenges to exclude potential jurors on the basis of their race.  *Batson*, 476 U.S. at 86. The first step of the three-step process used for evaluating *Batson* claims of racial discrimination is moot "whenever the prosecutor offers a race-neutral explanation for his peremptory challenges and the trial court rules on the ultimate factual issue of whether the prosecutor intentionally discriminated."  *See United States v. Barrett*, 496 F.3d 1079, 1104 (10th Cir. 2007) (citing *United States v. Johnson*, 941 F.2d 1102, 1108 (10th Cir. 1991)).  The trial court's decision on the ultimate question of discriminatory intent is "a finding of fact of the sort accorded great deference on appeal."  *See Hernandez v. New York*, 500 U.S. 352, 364 (1991).  "The disposition of a *Batson* claim is a question of fact subjected to the standard enunciated in 28 U.S.C. § 2254(d)(2)."  *Sallahdin v. Gibson*, 275 F.3d 1211, 1225 (10th Cir. 2002).  "The ultimate question of whether [applicant] has established purposeful discrimination in violation of *Batson* is a question of fact subject to deferential review."  *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (quoting *Cochran v. Herring*, 43 F.3d 1404, 1408 (11th Cir. 1995).

Whether the prosecution's explanation is facially neutral is subject to *de novo* review and whether the Applicant established that the prosecution intended to discriminate is subject to a clearly erroneous standard.  *See United States v. Sneed*, 34 F.3d 1570, 1580 (10th Cir. 1994).  The trial court's finding of fact is afforded great deference because the finding turns on the trial court's evaluation of the prosecutor's credibility.  *See United States v. Nelson*, 450 F.3d 1201, 1207 (10th Cir. 2006).  "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' "  *Hernandez*, 500 U.S. at 365 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985).

*Batson* requires both a clear and reasonably specific explanation of the prosecutor's legitimate reasons for exercising a challenge.  *See Batson*, 476 U.S. at 98 n. 20.  A legitimate reason is not required to make sense, but only in keeping with a defendant's equal protection rights.  *Purkett v. Elem*, 514 U.S. 765, 769 (1995).  "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."  *Hernandez*, 500 U.S. at 360.  "A race neutral explanation is simply any explanation, no matter how implausible, that is based on something other than the race of the juror.  The proffered reason need not be persuasive, or even plausible, so long as it is facially valid."  *See Barrett*, 496 F.3d at 1105 (citation and internal quotation marks omitted).

Here, Applicant, who is Black, challenged the prosecution's removal from the venire panel of the only Black juror and of another juror who was married to a Black man.  The prosecution was afforded the opportunity to address the challenge and stated that the Black juror was stricken because of her experience with a police officer, which

he believed would not allow her to be objective in considering the testimony of the

numerous officers that would be testifying in Applicant's case.  As for the juror who was

married to a Black man, the prosecution stated the reason for removal was that the juror

was a social worker and in his experience with juries social workers had difficulty

passing judgment.  The prosecution's reasoning is race neutral and facially valid.  The

Court, therefore, finds that Applicant has failed to rebut with clear and convincing

evidence that the trial court's decision to deny the *Batson* challenge was prejudicial and

a violation of his constitutional rights.

The CCA decision regarding this claim did not result in a decision that was

contrary to, or involve an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States and did not result in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.  Claim Two, therefore, lacks merit

and will be dismissed.

**C.      Claim Three**

Applicant asserts that the trial court erred in granting the prosecution's motion to

consolidate both criminal cases and that he was denied a fair trial because prejudicial

and cumulative testimony was introduced showing his propensity to commit burglary.

With respect to Applicant's consolidation claim the CCA found as follows:

> Before trial, the prosecution filed a motion to consolidate the
> charges from the two cases for trial under Crim. P. 13.  The trial court
> agreed.  Defendant contends that trial court abused its discretion by

consolidation his two cases, because the evidence introduced as a result of the consolidated action was prejudicial and cumulative. We disagree.

Crim. P. 8(a)(2) states that two or more offenses may be joined in a single indictment or information when they "are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Crim. P. 13 states that two or more separate cases may be consolidated into a single case when they "could have been joined in a single indictment [or] information." *People v. Gross*, 39 P.3d 1279, 1282 (Colo. App. 2001).

A decision to consolidate lies within the trial court's sound discretion and will not be disturbed on appeal unless that discretion is abused. *People v. Aalbu*, 696 P.2d 796, 806 (Colo. 1985). A defendant may demonstrate an abuse of discretion by showing that consolidation caused actual prejudice and that the jury was not able to separate the facts and legal principles applicable to each case. *People v. Rosa*, 928 P.2d 1365, 1373 (Colo. App. 1996). There is no prejudice where evidence of one event is admissible in a separate trial for the other. *People v. Early*, 696 P.2d 1116, 1119 (Colo. App. 1984).

The two crimes here were of the same or similar character. One included a charge of burglary; the other charges attempted burglary. They both involved liquor stores. In both cases, there was forced entry, or attempted forced entry, in the early morning hours when the stores were closed. Although the facts of the cases were not identical, "it is not essential that the means of committing the other crimes replicate in all respects the manner in which the crime charged was committed." *See People v. Owens*, 97 P.3d 227, 231 (Colo. App. 2004) (quoting *People v. McKibben*, 862 P.2d 991, 993 (Colo. App. 1993)).

Further, evidence of each offense would have been admissible in a separate trial for the other. *See* CRE 404(b); *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990). Here the trial court found evidence of the acts surrounding the burglary of the first liquor store was admissible to show defendant's intent, lack of mistake, and motive during the events at the second liquor store. The court found evidence of the acts at the second liquor store was admissible to show identification and motive in the burglary of the first liquor.

Defendant was interrupted before he could break into the second liquor store. Thus, evidence of the first burglary was relevant and admissible to show he intended to commit theft once inside.

Proof of defendant's identity as the person trying to force entry into the second liquor store was strong, because defendant was caught in the

act and later admitted his involvement to the police. Thus, proof from the attempted burglary of the second liquor store was relevant and admissible to corroborate the testimony of the owner of the first liquor store that, upon reviewing the surveillance tape, he was able to recognize defendant as the person who broke into his store.

Although the two offenses occurred about three months apart at different places, the offenses were closely related enough that they could have been joined in a single indictment or information under Crim. P. 8(a)(2). *See People v. Taylor*, 804 P.2d 196, 202 (Colo. App. 1990) (joinder permissible when three explosions occurred within a time frame of three months in two different locations). Because the charges could have been joined when originally filed, the trial court did not abuse its discretion by consolidating them.

The facts relating to each offense were not complex, and the jury was instructed to consider the evidence applicable to each count separately. There is no indication that the jury was unable to separate the facts and legal principles applicable to each offense. Therefore, we find there was no prejudice to defendant and thus no abuse of discretion in the trial court's decision to consolidate the separate cases.

*Small*, Nos. 05CA1045 & 05CA1046 at 5-8.

"Improper joinder will result in a constitutional violation only if it results in

prejudice so great as to deny a defendant his . . . right to a fair trial." *Webber v. Scott*,

390 F.3d 1169, 1178 (10th Cir. 2004) (internal quotation marks and citation omitted).

The joinder of multiple offenses in a single trial may result in prejudice to a defendant because the jury may use the evidence of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged.

*Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir. 1998) (quoting *Drew v. United States*,

331 F.2d 85, 88 (D.C. Cir.1964)) (internal quotation marks omitted). "The jury may also

confuse or cumulate the evidence of the various crimes charged and find guilt when, if

considered separately, it would not so find." *Lucero*, 133 F.3d at 1314 (quoting *Drew*,

331 F.2d at 88. (internal quotation marks omitted).

Here, as found by the CCA, the evidence regarding the two charges was
separate and distinguishable.  Therefore, the jury should not have confused the charges
and should have been able to obey the trial court's instruction to give the charges
separate consideration.  The evidence regarding one of the charges did not overwhelm
the other charge.  Neither charge was so inflammatory that joinder should have been
prejudicial to Applicant.  Applicant's prejudice claim is broadly stated and is not
persuasive to the Court.  The Court, therefore, finds that Applicant has failed to rebut
with clear and convincing evidence that the trial court's decision to consolidate the two
cases or charges against him was prejudicial and a violation of his constitutional rights.

The CCA decision regarding this claim did not result in a decision that was
contrary to, or involve an unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States and did not result in a
decision that was based on an unreasonable determination of the facts in light of the
evidence presented in the state court proceeding.  Claim Three, therefore, lacks merit
and will be dismissed.


**D.      Claim Four**

Applicant asserts that in violation of his Sixth and Fourteenth Amendment rights
the prosecution made improper remarks in the closing argument by referring to
Applicant as a professional burglar.

With respect to Applicant's prosecutorial misconduct claim the CCA found as
follows:

> Defendant contends both convictions must be overturned due to
> improper remarks by the prosecutor during closing argument.  Specifically,

31

defendant argues the prosecutor committed prosecutorial misconduct by suggesting to the jury that defendant was a "professional burglar."  We are not persuaded.

Absent a contemporaneous objection, we review a prosecutor's allegedly improper statements during closing argument for plain error. Crim. P. 52(b); *People v. Constant*, 645 P.2d 843, 847 (Colo. 1982).  We may consider defendant's failure to contemporaneously object as an indication of defendant's belief that the argument was not overly damaging.  *Domingo-Gomez v. People*, 125 P.3d 1043, 1054 (Colo. 2005).

Prosecutorial misconduct during closing argument rarely constitutes plain error.  *Liggett v. People*, 135 P.3d 725, 735 (Colo. 2006).  To constitute plain error, a prosecutor's misconduct must be flagrant or glaringly or tremendously improper.  *Constant*, 645 P.2d at 847. Comments that are "few in number, momentary in length, and . . . a very small part of a rather prosaic summation" do not warrant reversal under the plain error standard.  *Dominguez-Gomez*, 125 P.3d at 1053 (quoting *People v. Mason*, 643 P.2d 745, 753 (Colo. 1982))

When determining whether the prosecutor's statements were improper and thus warrant reversal, we consider, among other things, the language used, the context of the statements, whether the statements improperly expressed the prosecutor's personal opinion, whether the statements were an acceptable comment on the credibility of the witnesses, the strength of the evidence, whether the evidence was conflicting or inconclusive, whether the prosecutor improperly appealed to the jurors' sentiments, whether the misconduct was repeated, and any other relevant factors.  *Domingo-Gomez*, 125 P.3d at 1049; *Wilson v. People*, 743 P.2d 415, 420-21 (Colo. 1987).

In his closing argument, the prosecutor told the jury, "Mr. Small was doing his [job],' which suggested he was a professional burglar. Defendant did not object to this short statement, which constituted a small part of the prosecutor's closing comments, and it was not repeated.  The evidence supporting the convictions for each offense was strong and consistent.  Therefore, even assuming this comment was improper, it was not so flagrant or glaringly or tremendously improper under *Domingo-Gomez* and *Constant* as to constitute plain error.

*Small*, Nos. 05CA1045 & 05CA1046 at 8-10.

Habeas relief is available for prosecutorial misconduct only when the misconduct

is so egregious that it renders the entire trial fundamentally unfair.  *See Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 645 (1974).  In order to determine whether prosecutorial

misconduct rendered the trial fundamentally unfair, the Court must consider "the totality

of the circumstances, evaluating the prosecutor's conduct in the context of the whole

trial." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998).  Allegations of

prosecutorial misconduct are mixed questions of law and fact.  *See Fero v. Kerby*, 39

F.3d 1462, 1473 (10th Cir. 1994).  "Inappropriate prosecutorial comments, standing

alone, would not justify a reviewing court to reverse a criminal conviction obtained in an

otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985).

The courts must "consider the probable effect the prosecutor's [statements]

would have on the jury's ability to judge the evidence fairly." *Tillman v. Cook*, 215 F.3d

1116, 1129 (10th Cir. 2000) (quoting *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir.

1998)).  In making this assessment, the courts should examine whether "the

prosecutor's argument . . . manipulate[d] or misstate[d]" the evidence, "whether it

impacte[d] other specific rights of the accused such as the right to counsel or the right to

remain silent," whether "the objectionable content was invited by or responsive to the

opening summation of the defense," and whether "[t]he weight of the evidence against

applicant was heavy." *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986).  "Any

cautionary steps - such as instructions to the jury - offered by the court to counteract

improper remarks," are also relevant. *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir.

2006) (alteration in original) (internal quotation marks omitted).

"[I]t is not enough that the prosecutors' remarks were undesirable or even

universally condemned." *Darden*, 477 U.S. at 181 (internal quotation marks omitted).

Rather, "[t]he ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland*, 459 F.3d at 1024.

The Court has reviewed the prosecution's closing argument.  Trial Tr., Jan. 12, 2005, at 18-22 and 35-39.   The  prosecution stated, "[d]o you really believe these police officers came in here and lied to you, or do you believe they're just doing their job and Mr. Small was doing his and they caught him?"  *Id.* at 37.

The Court finds that the comment to which Applicant objects was made in passing and was not referred to again.  *See Anaya v. Romero*, 627 F.2d 226, 228 (10th Cir. 1980) (isolated comment vouching for credibility of state's witness did not make trial so constitutionally infirm as to justify federal habeas corpus relief).

In addition, the trial court previously instructed the jury that opening and closing statements are not evidence.  (Trial Tr., Jan. 10, 2005, at 136).  A reviewing court "presume[s] that the jurors conscientiously observed the instructions and admonitions of the court.  Speculation that this was not done cannot be employed in assailing the jury's verdict, in the absence of a showing of facts proving otherwise."  *United States v. Morris*, 623 F.2d 145, 148 (10th Cir. 1980) (citing *United States v. Cooper*, 464 F.2d 648 (10th Cir. 1972)); *see also Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (finding that jurors are presumed to follow the instructions given); *Boyde v. California*, 494 U.S. 370, 384 (1990) (explaining that "arguments of counsel generally carry less weight with a jury than do instructions from the court").  Applicant has failed to present any facts demonstrating that the jury disregarded the instructions of the trial court.

Therefore, when "[v]iewed in context, the prosecutor's statement[ ] . . . [was] not such as to undermine the fundamental fairness of the trial and contribute to a

miscarriage of justice."  *Young*, 470 U.S. at 16 (citation omitted).  Having considered the

entire record, the Court finds that Applicant has failed to show that the state appellate

court's rejection of this claim was contrary to or an unreasonable application of the

*Donnelly* standard.  The CCA decision regarding this claim did not result in a decision

that was contrary to, or involve an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States and did not

result in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding.  Claim Four, therefore,

lacks merit and will be dismissed.

**E.**     **Claim Five**

Applicant asserts that he was deprived of his rights to a jury trial in the

determination of the habitual criminal counts.

With respect to Applicant's habitual counts claim the CCA found as follows:

> Finally, defendant contends reversal is required because his Sixth
> Amendment right to trial by jury and right to due process were violated
> when he was not afforded a jury trial on the habitual criminal counts.
> Defendant argues Colorado's Habitual Offender Statute is unconstitutional
> because it allows a judge, rather than a jury, to find facts that increase a
> defendant's sentence beyond that authorized by the jury's verdict.  We
> disagree.
>
> Several divisions of this court have rejected this argument.  *People
> v. Benzor*, 100 P.3d 542, 545 (Colo. App. 2004); *People v. Carrasco*, 85
> P.3d 580, 582 (Colo. App. 2003); *People v. Johnson*, 74 P.3d 349, 355
> (Colo. App. 2002).  We agree with those decisions here, and, accordingly,
> we reject defendant's contention.

*Small*, Nos. 05CA1045 & 05CA1046 at 10-11.

The cases cited to by the CCA recognize that *Apprendi v. New Jersey*, 530 U.S.

466 (2000), held that, "[o]ther than the fact of a prior conviction, any fact that increases

the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  The CCA rejected Applicant's *Apprendi* claim because Applicant's sentence was enhanced as the result of his prior convictions.  That determination is neither contrary to nor an unreasonable application of federal law.  In fact, it is completely consistent with clearly established federal law, which explicitly excludes the fact of a prior conviction from the rule in *Apprendi*.  *See Apprendi*, 530 U.S. at 490.  Therefore, Applicant's fifth claim also lacks merit and will be dismissed.

## V. CONCLUSION

Accordingly, it is ORDERED that Applicant Wayne A. Small's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (Doc. No. 3) and Addendum to Applicant's 28 U.S.C. 2254 Petition for Writ of Habeas Corpus ("Addendum") (Doc. No. 24) are DENIED and the civil action is dismissed WITH PREJUDICE.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.  It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant Wayne A. Small has not made a substantial showing of the denial of a constitutional right, pursuant to 28 U.S.C. § 2253(c).

Dated this 13th day of July, 2011.

BY THE COURT:

William J. Martínez
United States District Judge

36